UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EMMETT FARR,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL PARAMO, et al.,<br><br>Defendants. | Case No.: 16cv1279-JLS-MDD<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DEFENDANTS' PARTIAL MOTION TO DISMISS**<br><br>**[ECF No. 30]** |

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

For the reasons set forth herein, the Court **RECOMMENDS** that Defendants' Partial Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

## I.    PROCEDURAL HISTORY

Plaintiff James Emmett Farr is a state prisoner proceeding *pro se*. (ECF No. 1). On May 27, 2016, Plaintiff filed a civil complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1).

1

In his Complaint, Plaintiff sets forth 3 claims against employees of the Richard J. Donovan Correctional Facility ("RJD"). [1] (*Id.* at 14-16 (all pincites refer to the computer-generated CM/ECF pagination; not the pagination in the original document)). All of Plaintiff's claims are related to a use of force incident that took place at RJD on November 1, 2014. (*Id.*). Plaintiff alleges that on November 1, 2014, Defendants Ramrakha, Hernandez and Barnard tripped and beat him and destroyed his jewelry and eyeglasses while escorting him from his cell to a holding cell in retaliation for being a named plaintiff in a prisoner class action case. He further alleges that they denied him medical treatment for his injuries, left him in the holding cell for 3 hours without water or a bathroom break, and conspired to cover up the use of excessive force in their reports of the incident. (*Id.*). In addition, he complains that after the excessive force incident he was housed in a cell that had not been cleaned of pepper spray from another inmate's incident, and he was not given basic sanitary supplies (*e.g.*, a toothbrush) for approximately

---

[1] Plaintiff's Complaint consists of 1) a form complaint that identifies 3 claims by number and generally refers to the attachments, but does not distinguish the legal bases or the defendants responsible for each claim; 2) a typewritten attachment entitled "Complaint for Damages" that includes allegations typical of a civil complaint and distinguishes the 3 claims by number, legal basis and defendants responsible, but also raises issues of retaliation and includes retaliation and conspiracy in the caption; and, 3) an attachment containing 99 pages of exhibits including, *inter alia*, his declaration, grievances, incident reports and medical reports. (ECF No. 1).
  The captions of both the form complaint and the typewritten complaint identify claims for conspiracy and retaliation, but Plaintiff does not include a claim for retaliation or factual allegations to support the conspiracy allegation. The typewritten complaint identifies several Defendants who are not identified in the form complaint and who are not mentioned elsewhere in the typewritten complaint (*e.g.*, Defendants Savala, Solo, Stout and Wall).
  The Court construes the Complaint as containing the 3 claims as alleged against the Defendants specified in the typewritten complaint, plus the integrated retaliation and deliberate indifference to medical needs claims, and the generalized conspiracy allegations.

2

38 hours. Plaintiff alleges that these Defendants also interfered with the grievance process after the incident, and ignored letters from him and his wife complaining about the incident. Plaintiff further alleges that Defendants Amaro and Fink stole his personal property or allowed other inmates to pilfer his property from his cell. (*Id*. at 14-15).

Claim 1 alleges Defendants Ramrakha, Hernandez, Barnard, Amaro and Fink (a) violated Plaintiff's 8th Amendment right to be free from cruel and unusual punishment by beating him, and (b) violated his 14th Amendment right to due process by stealing his property or allowing other inmates to steal his property. (ECF No. 1 at 14-15). Claim 2 alleges that Defendant Warden Paramo violated Plaintiff's 8th Amendment right to be free from cruel and unusual punishment by maintaining inadequate grievance policies and procedures, and that Defendant Paramo violated other unspecified constitutional civil rights by maintaining unspecified policies, procedures and practices. (*Id*. at 15). Claim 3 is a state law claim for negligence against Defendant Paramo that alleges that Defendant Paramo's policies empowered other Defendants to attack Plaintiff and steal his property. (*Id*. at 15-16). Plaintiff also raises issues of conspiracy, retaliation, and deliberate indifference to medical needs in his complaint, though he does not identify them as enumerated claims. (*Id. passim*).

Defendants contend that the Court should dismiss all claims except the 8th Amendment excessive force claim against Defendants Hernandez, Barnard and Ramrakha. Defendants contend that Claim 1 should be dismissed because it fails to state an 8th Amendment claim against Defendants Amaro and Fink or a 14th Amendment due process claim against any Defendant. Defendants further contend that Claim 2 fails because it improperly attempts to impose *respondeat superior* liability on Warden

3

Paramo and is not sufficient to state a *Monell* claim. Defendants assert that Claim 3, the state law negligence claim against Defendant Paramo, fails because Plaintiff did not comply with the California Government Claims Act, and Defendant Paramo is immune from liability for the actions of his subordinates under state law. Further, Defendants argue that Plaintiff fails to state any claim as to Defendants Savala and Ramirez because he fails to allege any facts concerning either Defendant. Defendants also challenge Plaintiff's unenumerated claims of conspiracy, retaliation, and deliberate indifference to medical needs. Defendants do not move to dismiss Plaintiff's 8th Amendment excessive force claim against Defendants Hernandez, Barnard and Ramrakha.

Plaintiff opposes the motion to dismiss by alleging a widespread conspiracy in which all Defendants were involved. (ECF No. 33). Plaintiff includes new allegations not raised in the complaint and attaches new exhibits. Plaintiff urges the Court to deny the motion to dismiss based primarily on Plaintiff's suspicions of conspiracy by Defendant Paramo ("the figurehead") and "what seems to be a para-military organization," and Plaintiff's hopes of what discovery may reveal.

Defendants reply that Plaintiff's opposition offers only "new allegations not raised in the Complaint" and "speculation that some facts must exist to support his conclusory allegations." Defendants also restate the arguments in their moving papers and argue why the new allegations and attachments in Plaintiff's opposition fail to state a claim. (ECF No. 34).

## II. BACKGROUND FACTS

These facts, taken from the Complaint, should not to be construed as findings of fact by the Court.

On November, 1, 2014, Plaintiff was "ordered to get into [his] blues

(class A clothing) and report to the building 10 office to Sgt. Ramrakha." (ECF No. 1-2 at 10). The order was in response to a report that Plaintiff was refusing his current cellmate, and that Plaintiff had a history of refusing or intimidating cellmates. (*Id*. at 10-11). According to a Crime Incident Report filed by Defendant Ramrakha, when approached regarding the cellmate issue, Plaintiff "started showing aggressiveness by talking loud and tightening his body in an assaultive manner." (*Id*. at 23). Allegedly, Plaintiff then stated to Defendant Ramrakha, "take me to the fucking hole, I don't want any cellies." (*Id*. at 23). Plaintiff denies that he said this. (*Id*. at 11).

Defendant Ramrakha ordered Defendant Hernandez "to handcuff [Plaintiff], conduct a clothed body search and escort him to the B Program office." (*Id*. at 23). After being handcuffed and removed from his cell, Plaintiff was escorted by Defendants Ramrakha and Hernandez, with Defendant Ramrakha walking "approximately 5 feet in front of [Plaintiff]" and Defendant Hernandez walking behind Plaintiff. (*Id*. at 23 and 25). Defendants Hernandez and Ramrakha reported that during the escort Plaintiff yelled, "Fuck you Sarge and write that in your report, I want you guys to assault me so I can sue you motherfuckers, I am a hell of a writer." (ECF No. 1-2 at 23 and 25). Plaintiff denies saying anything antagonistic. (*Id*. at 11).

Plaintiff reportedly continued "to [shout] obscenities, then lunged forward towards [Defendant] Ramrakha's direction." (*Id*. at 25). Defendant Hernandez attempted to "pull [Plaintiff] back towards [himself] but he continued to move forward." (*Id*. at 25). Defendant Hernandez fell on top of Plaintiff or fell with Plaintiff and held him to the ground. Plaintiff maintains that he did not lunge as he was restrained and physically unable to do so. (*Id*. at 11). Plaintiff also alleges that, while he was prostrate after the fall,

5

Defendants kicked him, slammed his face into the pavement, snatched his necklace from his neck, and crushed his eyeglasses. (ECF No. 1 at 11).

Plaintiff was then taken to a 3' x 3' x 8' holding cell located in the gym, where his clothing was cut off of him and he remained for three hours without water or a bathroom break. (ECF No. 1-2 at 12, 23, 25, 27, 60, and 74). Plaintiff alleges he was pushed into the holding cell bars, causing further injury. Plaintiff claims the medical staff requested to remove the handcuffs to take Plaintiff's blood pressure, but the correctional staff refused. (*Id.* at 12). Plaintiff alleges the medical staff left and never returned. (*Id.*). Plaintiff was Mirandized by Defendant Ramirez regarding his involvement in the earlier altercation which was categorized as an "attempted assault on staff." (*Id.* at 78).

At 9:00 p.m., after three hours in the holding cell, Plaintiff was escorted to the Administrative Segregation (Ad-Seg) building and placed in a cell "without bedding, a mattress or clothing aside from [his] bloody boxers." (*Id.* at 13 and 28). According to Plaintiff, the cell was not properly decontaminated after a prior unrelated use of pepper spray, causing his skin to burn, his eyes to hurt and his breathing to be labored. (*Id.* at 13). Plaintiff remained in the Ad-Seg cell for approximately 38 hours without a mattress, bedding, or clothing. (*Id.* at 14). During the time Plaintiff was in Ad-Seg, his belongings were confiscated from his cell and some—but not all—were later returned to him. (*Id.* at 14, 15, and 71).

At 11:30 a.m. on Monday, November 3, 2014, Defendant Stout interviewed Plaintiff and informed Plaintiff he was being charged with attempted assault on staff. (*Id.* at 14). According to a document dated November 13, 2014, and signed by Defendant Paramo, the matter was to be handled administratively, instead of being referred to the District Attorney

for criminal prosecution. (*Id.* at 63).

On November 13, 2014, Plaintiff filed an inmate appeal regarding the use of excessive force on November 1, 2014. On January 2, 2015, Plaintiff filed an appeal regarding the Rules Violation Report (RVR) that was filed after the November 1, 2014, incident. (*Id.* at 42, 57-58). On January 13, 2015, Plaintiff filed an inmate appeal regarding the confiscation of his property. (*Id.* at 52). Plaintiff alleges Defendants interfered in the grievance process. Defendants do not move for dismissal for failure to exhaust administrative remedies.

On September 17, 2015, Plaintiff filed a claim with the California Victim Compensation & Government Claims Board (VCGCB). (*Id.* at 91). The VCGCB claim was denied as untimely filed, and Plaintiff's request for an extension was denied. (*Id.* at 91-92). The denial letter explains that Plaintiff can appeal the denial by petitioning a court for relief from the claims requirement. Plaintiff does not allege that he appealed the denial.

### III. LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal quotations omitted). The pleader must provide the Court with "more than an un-adorned, the-defendant-unlawfully harmed-me accusation." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements will not suffice." *Id.* "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [a court is] not bound to

7

accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations omitted).

A *pro se* pleading is construed liberally on a defendant's motion to dismiss for failure to state a claim. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citing *Ortez v. Washington Cnty.*, 88 F.3d 804, 807 (9th Cir. 1996)). The *pro se* pleader must still set out facts in his complaint that bring his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

A court "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents,* 673 F.2d 266, 268 (9th Cir. 1982). Nor may a plaintiff supply missing elements in his opposition. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original)).

A *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the deficiencies cannot be cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

## IV. DISCUSSION

### A. Claim 1: 8th Amendment Claim (Amaro and Fink)

Defendants move for dismissal of Plaintiff's 8th Amendment claim for cruel and unusual punishment as to Defendants Amaro and Fink, but concede that the claim is sufficiently pled as to Defendants Ramrakha, Hernandez and Barnard.

Defendants argue that this claim "is devoid of any facts showing that Defendants Amaro and Fink had anything to do with the use of force against Plaintiff." (ECF No. 30-1 at 11). Defendants assert that the exhibits

8

attached to the Complaint show that these Defendants were not present during the alleged use of excessive force. (*Id.*). Defendants further argue that vicarious liability does not exist under 42 U.S.C. § 1983, and Plaintiff's failure to identify what Defendants Amaro and Fink did to directly participate in the use of force incident is determinative. (*Id.* citing *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988)).

In his opposition, Plaintiff does not cite to allegations within the pleadings showing Defendants Amaro's or Fink's direct involvement in or presence during the use of force. Instead, Plaintiff explains that these Defendants were part of the conspiracy and newly alleges that Defendant Amaro was the employee who reported that Plaintiff was uncooperative in accepting cellmates, which led to Plaintiff being escorted from his cell.

The Complaint does not contain sufficient factual allegations against Defendants Amaro or Fink to support the excessive force claim against them. There are no statements alleging the presence of either of them, much less alleging the use of force by either Defendant. (ECF No. 1). Plaintiff cannot bridge the pleading gap with vague and speculative allegations of conspiracy or vicarious liability. *Iqbal*, 556 U.S. at 677-78; *Twombly*, 550 U.S. at 570; *Leer*, 844 F.2d at 633; *and see* Section F below (conspiracy liability). The Court **RECOMMENDS** that the 8th Amendment excessive force claim be **DISMISSED** without prejudice as to Defendants Amaro and Fink.

### B. Claim 1: 14th Amendment Due Process Claim

Plaintiff alleges his due process rights were violated "when [Defendants Ramrakha, Hernandez, Barnard, Amaro and Fink] stole Plaintiff's personal property and/or allowed other inmates to steal Plaintiff's property." (ECF No. 1 at 14). Plaintiff supports this claim with factual allegations in his attached declaration, specifying that Defendant Amaro was responsible for collecting,

9

inventorying, and boxing Plaintiff's property in the aftermath of the alleged excessive force incident. (ECF No. 1-2 at 14-15). He further alleges that Defendant Fink converted "excess Compact Discs" worth approximately $200. (*Id.*). Further, he alleges that Defendant Amaro confiscated about $1,300 worth of property deemed excessive or altered in violation of prison regulations, and either converted it to his own use, trashed it, or gifted it to "his snitches." (*Id.*). Defendants are correct that Plaintiff's allegations, accepted as true for purposes of this motion, fail to state a 14th Amendment Due Process claim.

A deprivation or destruction of a prisoner's property does not violate the prisoner's due process rights under the 14th Amendment so long as the state provides a post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 534 (1984); *Barnett v. Centoni*, 31 F.3d 813, 186 (9th Cir. 1994). "California Law provides an adequate post-deprivation remedy for any property deprivations." *Barnett*, 31 F.3d at 816-817; CAL. GOV'T CODE §§ 810-895 (Government Claims Act). Defendants raise these authorities in their moving papers. In his opposition, Plaintiff concedes that he failed to seek post-deprivation remedies in state court (ECF No. 33 at 14:15-19), but urges the Court to right the wrong nevertheless. It appears he is asking the Court to institute criminal proceedings against these Defendants. (ECF Nos. 1 at 7; 33 at 14 and 19).

The Court finds that California provides an adequate post-deprivation remedy for the alleged conversion of Plaintiff's property. Plaintiff has not identified facts that, if pled, could cure the defect in this claim. Criminal prosecution is not a remedy available under 42 U.S.C. §1983. Consequently, this Court **RECOMMENDS** that Plaintiff's 14th Amendment Due Process claim be **DISMISSED** with prejudice as to all Defendants.

## C. Claim 2: *Respondeat Superior/Monell* Claim (Paramo)

Claim 2 alleges that Defendant Paramo should be held responsible under 42 U.S.C. §1983 for the constitutional deprivations perpetrated by his subordinates. The Complaint specifies that Defendant Paramo is sued in both his individual and official capacities. According to the Complaint, Plaintiff's civil rights were violated because Defendant Paramo maintains inadequate "policies, procedures and pervasive practices," particularly with respect to RJD's grievance and inmate complaint procedures. Plaintiff does not identify the particular policy, procedures or practices with any more specificity, and does not allege how Defendant Paramo used the policies, procedures or practices to cause the alleged injuries.

Defendants argue that there are no allegations showing Defendant Paramo's direct involvement, that there is no *respondeat superior* liability in §1983 actions, and that Plaintiff does not adequately plead a *Monell*-style policy claim. In his opposition, Plaintiff argues that Defendant should have known about the alleged deprivations because Plaintiff and his wife wrote to Defendant Paramo directly after the incident.

When a plaintiff sues an official *as an individual*, the plaintiff must allege the individual's personal involvement. *Ivey,* 673 F.2d at 268; *see also Wesley v. Davis*, 333 F. Supp. 2d 888, 892 (C.D. Cal. 2004) (holding individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement necessary to state a claim for damages). But when the official is sued *in their official capacity*:

> [I]t is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. See, *e. g., Monroe* v. *Pape*, 365 U.S. 167 (1961). More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "'moving

force'" behind the deprivation, *Polk County* v. *Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell, supra*, at 694); thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. *Monell, supra; Oklahoma City* v. *Tuttle*, 471 U.S. 808, 817-818 (1985); *id.*, at 827-828 (Brennan, J., concurring in judgment).

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Here, Plaintiff does not allege Defendant Paramo's direct involvement in his pleading. Plaintiff's allegations that Defendant Paramo knew about the alleged deprivations *after the fact* because of the letters he and his wife wrote directly to the warden does not show direct involvement by Defendant Paramo in the November 1, 2014, incident or its aftermath. Further, Defendant Paramo's "consideration of plaintiff's appeal does not give rise to a claim for relief." *Hannon v. Kramer*, Case No. 1:5cv622-REC-SMS-P, 2006 WL 1409710, at *3 (E.D. Cal. May 23, 2006). Plaintiff has not sufficiently pled Claim 2 against Defendant Paramo as an individual.

As for Defendant Paramo's liability as an official, Defendants are correct that government officials cannot be held liable under §1983 for their subordinates' conduct merely because the official is the supervisor of the defendant who inflicted the harm. *Iqbal*, 555 U.S. at 676; *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).

The question remains whether Defendant Paramo can be held liable on a *Monell*-type basis. To survive a motion to dismiss, the plaintiff's allegations concerning the policy or custom at issue and the official's role in applying that policy or custom must be more than conclusory, and must bring the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Complaint contains nothing more than conclusory allegations about Defendant Paramo's involvement; vague, threadbare descriptions of the "policies, procedures and pervasive practices;" and speculation about the

12

practices by prison staff that are unsupported by factual allegations. Consequently, this Court **RECOMMENDS** finding that Plaintiff fails to state an official-capacity §1983 claim against Defendant Paramo.

The Court **RECOMMENDS** that Claim 2 against Defendant Paramo be **DISMISSED** without prejudice.

### D. Claim 3: Negligence (Paramo)

Plaintiff's 3rd Claim for negligence against Defendant Paramo fails because Plaintiff did not comply with California's claim presentation requirement and on immunity grounds.

First, Plaintiff has not shown that he complied with California's Government Tort Claims Act (Act), a necessary prerequisite to a state law claim against a state official. Defendants correctly argue that a claim under the Act must be presented to the Victim Compensation and Government Claims Board (Board) within six months of the alleged tortious conduct. CAL. GOV'T CODE §911.2. Compliance with the Tort Claims Act is an element of the cause of action, *State of Cal. V. Superior Court (Bodde),* 32 Cal. 4th 1234, 1240 (2010), is required, *Mangold v. California Public Utilities Com'n,* 67 F.3d 1470, 1477 (9th Cir. 1995), and "failure to file a claim is fatal to a cause of action." *Hacienda La Puente Unified School Dist. of Los Angeles v. Honig,* 976 F.2d 487, 495 (9th Cir. 1992).

Plaintiff concedes, and the documents he attaches to his Complaint confirm, that Plaintiff did not file his claim within six months. (ECF Nos. 1 at 13, 1-2 at 93). The incident occurred on November 1, 2014, but he did not file his government claim until November 18, 2015—more than one year after the incident. (*Id.*). The government claim was denied as untimely. (ECF No. 1-2 at 91). The denial letter informed Plaintiff that if he wished to file a court action pursuing the matter, he would first have to petition the appropriate

13

court for relief. (*Id.*). Plaintiff has not shown that he petitioned for relief from the claims presentation requirement. Accordingly, he is precluded from bringing this state law negligence claim.

Second, Defendant Paramo is immune from liability on state law claims for the actions of his subordinates. California's Government Code §820.8 states in part that "a public employee is not liable for an injury caused by the act or omission of another person." Further, Defendant Paramo is immune concerning mishandling of the grievance process, because California government officials are immune from liability on state law claims "for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously or without probably cause." CAL. GOV'T CODE §821.6.

Plaintiff has not shown that he can amend the pleading to show compliance with the claims presentation requirement nor to avoid application of the state law immunities. Consequently, the Court **RECOMMENDS** that Claim 3, for negligence against Defendant Paramo, be **DISMISSED** with prejudice.

### E. Defendants Savala and Ramirez

Defendants Savala and Ramirez move for dismissal on the grounds that the 3 enumerated claims do not name them, and the Complaint and attachments are devoid of any allegations showing direct involvement by either Defendant in any alleged constitutional deprivation.

The Court agrees. Plaintiff does not include these Defendants' names in his 3 enumerated claims. Except for allegations showing that Defendants Savala and Ramirez were witnesses to the underlying events, and threadbare allegations of conspiracy and retaliation, the Complaint is barren of any allegations concerning these two Defendants. For instance, Plaintiff alleges

that Defendant Savala was the individual who conducted a recorded interview of Plaintiff following the November 1, 2014, incident, and Plaintiff alleges that Defendant Ramirez activated his personal alarm and called on his radio that a staff assault was occurring. Plaintiff does not allege either was directly involved in the use of force. *Leer*, 844 F.2d at 633. Plaintiff's conclusory allegations of conspiracy and retaliation are also insufficient to state a claim. *Twombly*, 550 U.S. at 570; *and see* Section F below (conspiracy liability). Accordingly, the Court **RECOMMENDS** that Defendants Savala and Ramirez be **DISMISSED** without prejudice from the action.

### F. Conspiracy

Although Plaintiff's form complaint and the caption of his typewritten complaint mention the word "conspiracy," his enumerated claims and supporting allegations do not include any further mention of conspiracy. There are no factual allegations to support a claim of conspiracy under §1983, though the attachments include allegations that are suggestive of conspiracy. (*See e.g.*, ECF No. 1-2 at 14 (referring to the "Code of Silence," and mentioning Defendants had an unspecified "diabolical plan.").

Defendants challenge the conspiracy allegations as insufficient in their motion to dismiss, and Plaintiff adamantly defends his conspiracy "claim" in his opposition. The Court, of course, disregards any new allegations of conspiracy that Plaintiff raises for the first time in his opposition.

To allege a claim of conspiracy under § 1983, a plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. *Twombly*, 550 U.S. at 570; *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). "Vague and conclusory allegations of official participation in civil rights violations are not

15

sufficient." *Ivey, supra*, 673 F.2d at 268; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (conclusory allegations of conspiracy insufficient to support a claim under section 1983 or 1985). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support plaintiff's claim." *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotation omitted). Conspiracy can be shown by circumstantial evidence, but the ability and opportunity to conspire, without more, are insufficient to prove the existence of a conspiracy. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1547 (9th Cir. 1989)(*en banc*); *Meadows v. Porter*, Case No. 2:7cv475-HDM-RAM, 2009 WL 2050493, at *12 n.19 (E.D. Cal. 2009) (circumstantial evidence that prison officer met with another defendant and laughed at plaintiff insufficient to support claim of conspiracy).

The allegations in the Complaint suggesting conspiracy are too vague, conclusory and speculative to successfully articulate any of the claims or attach liability to Defendants. Plaintiff does not specify the conspiracy agreement or provide facts showing more than a mere opportunity or ability to conspire. Consequently, to the extent Plaintiff's allegations suggest a conspiracy, this Court **RECOMMENDS** finding Plaintiff has not sufficiently pled conspiracy under §1983.

### G. 1st Amendment Retaliation Allegations

Although Plaintiff does not include an enumerated 1st Amendment retaliation claim, his allegations, construed liberally, claim that Defendants used excessive force in retaliation for Plaintiff exercising his First Amendment rights to petition the courts as a class action plaintiff and through the prison grievance system.

Defendants argue that Plaintiff fails in his burden to allege that

16

legitimate correctional purposes did not motivate the actions by the defendant prison officials. (ECF No. 30-1 at 21:22-26) (citing *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995)).

Indeed, it is Plaintiff's burden to plead that the alleged retaliatory action does not advance legitimate penological goals. "A prisoner suing prison officials under [§] 1983 for retaliation must allege that he [or she] was retaliated against for exercising his [or her] constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam); *see also Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012) ("To establish a claim for retaliation, a prisoner must show that a prison official took some adverse action against an inmate because of that prisoner's protected conduct, that the action chilled the inmate's exercise of his constitutional rights, and the action did not advance a legitimate correctional goal."); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). Such claims must be evaluated in light of the deference that must be accorded to prison officials. *See Pratt*, 65 F.3d at 807.

Plaintiff's allegations are silent as to whether Defendants' alleged misconduct did or did not advance legitimate penological goals, and are thus insufficient. The Court **RECOMMENDS** finding that Plaintiff has not adequately pled a 1st Amendment retaliation claim.

### H. 8th Amendment Deliberate Indifference

The Complaint alleges that Defendants' were deliberately indifferent to his medical needs when they failed to ensure treatment for the injuries he sustained in the use of force incident. Defendants contend that Plaintiff's allegations of deliberate indifference are too vague to state a claim.

Prison authorities have a responsibility to provide for an inmate's

17

medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). In the worst instance, a failure to do so may cause an inmate to suffer serious physical injury or death, or in a less serious scenario, pain serving no "penological purpose," thereby violating the Eighth Amendment. *Id.* at 103. But medical malpractice, negligence or a prison accident does not rise to the level of a Constitutional violation. *Id.* at 105; *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991) (overruled on other grounds). The test is "whether the officials exhibited deliberate indifference." *McGuckin*, 974 F.2d at 1059 (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal quotations omitted)).

Deliberate indifference is a high standard. *Hamby v. Hammond*, 2015 U.S. Dist. LEXIS 34678, *52 (W.D. Wash. Feb. 11, 2015). To meet the deliberate indifference standard on an 8th Amendment claim, a plaintiff must satisfy two prongs: one objective and one subjective. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (prison officials sued in their official capacities for deliberate indifference to inmate's medical needs).

To satisfy the objective prong, a plaintiff must show that he has a serious medical need. *Id.* (citing *Estelle*, 429 U.S. at 104). A serious medical need is shown if a failure to provide adequate treatment results in wanton or unnecessary infliction of pain. *McGuckin*, 974 F.2d at 1059.

To satisfy the subjective prong, a plaintiff must show the prison official was deliberately indifferent to his needs. *Colwell*, 763 F.3d at 1066. This means the official knew of an excessive risk to the inmate's health and safety and then consciously disregarded it to the inmate's harm. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). The official must have been aware of facts or factual circumstances that would allow him to draw the inference that a substantial risk of serious harm to the inmate's health and safety

18

exists, and he must *also* draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added).

Plaintiff alleges that after Defendants Ramrakha, Hernandez, Barnard, "…and a few other officers," assaulted him, Defendant Barnard shoved Plaintiff into the holding cell, "whereupon Plaintiff's face was smashed into the back of said cage. While still in handcuffs, bleeding from face and head injuries sustained during the attack," Plaintiff's clothes were cut off his body. (ECF No. 1 at 11). While these allegations may be sufficient to show an objective serious medical need (bleeding head injuries), Plaintiff has failed to allege who was deliberately indifferent to his needs.

Accordingly, this Court **RECOMMENDS** finding that Plaintiff has not sufficiently alleged an 8th Amendment deliberate indifference claim. The Court further **RECOMMENDS** that the 8th Amendment deliberate indifference claim be **DISMISSED** without prejudice as to all Defendants.

### V.     CONCLUSION

For the reasons set forth herein, it is **RECOMMENDED** that: 1) this Report and Recommendation be adopted in its entirety; 2) Defendants' Motion be **GRANTED in part and DENIED in part**; 3) the 8th Amendment cruel and unusual punishment claim in Claim 1 be **DISMISSED** without prejudice as to Defendants Amaro and Fink; 4) the 14th Amendment due process claim in Claim 1 be **DISMISSED** with prejudice as to all Defendants; 5) Claim 2 against Defendant Paramo be **DISMISSED** without prejudice; 6) Claim 3 against Defendant Paramo be **DISMISSED** with prejudice; 7) all claims against Defendants Savala and Ramirez be **DISMISSED** without prejudice; 8) Plaintiff's 1st Amendment retaliation claim and generalized conspiracy allegations be **DISMISSED** without prejudice; and that 9) Plaintiff's 8th Amendment deliberate

indifference claim be **DISMISSED** without prejudice as to all Defendants.

This Report and Recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. §636(b)(1). Any party may file written objections with the court and serve a copy on all parties by **September 1, 2017**. The document shall be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed by **September 15, 2017**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: August 18, 2017

Hon. Mitchell D. Dembin
United States Magistrate Judge

20

16cv1279-JLS-MDD