UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EMMETT FARR, CDCR #T-51954, Plaintiff, vs. WARDEN DANIEL PARAMO, et al., Defendants. | Case No.: 16-CV-1279 JLS (MSB) **ORDER (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND (2) TO SHOW CAUSE WHY CLAIMS AGAINST DEFENDANT STOUT SHOULD NOT BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(m)** (ECF No. 73) |

Currently before the Court is a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Hernandez, Ramrakha, and Barnard[1] ("MSJ," ECF No. 73), as well as Plaintiff James Emmett Farr's Opposition ("Opp'n," ECF No. 92) and Defendants' Reply ("Reply," ECF No. 95). For the reasons explained below, the Court **GRANTS** Defendants' Motion for Summary Judgment and **ORDERS** Plaintiff **TO SHOW CAUSE** no later than <u>thirty (30) days</u> from the date this Order is electronically

---

[1] In his Complaint, Plaintiff identifies this Defendant as "Bernard"; however, according to the filings by Defendants, it appears the correct spelling is "Barnard."

docketed why the claims against Defendant Stout should not be dismissed for want of prosecution pursuant to Federal Rule of Civil Procedure 4(m).

## BACKGROUND

### I.     Procedural Background

On May 27, 2016, Plaintiff filed a Complaint ("Compl.") pursuant to 42 U.S.C. § 1983, alleging constitutional violations by Defendants Paramo, Hernandez, Fink, Ramrakha, Amaro, Barnard, Ramirez, Savala, Soto, Stout, and Wall.  *See* ECF No. 1 at 1, 8.[2]  On January 13, 2017, the Court granted Plaintiff's request for the United States Marshall Service ("USMS") to effect service of his Complaint.  *See* ECF No. 11.  To date, Defendant Stout has not been properly served; consequently, he has not appeared in this action.  *See* ECF Nos. 19, 48.

On March 29, 2017, Defendants Hernandez, Fink, Barnard, Amaro, Ramirez, Paramo, Ramrakha, and Savala moved to dismiss portions of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* ECF No. 30.  On August 18, 2017, Magistrate Judge Dembin issued a Report and Recommendation in which he recommended dismissal of (1) all Eighth Amendment claims against Defendants Amarao and Fink; (2) the Fourteenth Amendment, First Amendment retaliation, and generalized conspiracy claims as to all Defendants; (3) all claims against Defendant Paramo; and (4) the Eighth Amendment failure to protect claims as to all Defendants.  *See* ECF No. 35. On December 18, 2017, this Court adopted this Report and Recommendation in its entirety. *See* ECF No. 44.

Plaintiff later requested, and was granted, leave to file an amended complaint.  *See* ECF Nos. 46, 52.  Plaintiff was to file his amended complaint no later than April 5, 2018. *See* ECF No. 52.  That date has long since passed and Plaintiff chose not to file an amended

---

[2] Page numbers for all documents filed in the Court's Case Management/Electronic Case File ("CM/ECF") refer to the pagination generated by CM/ECF as indicated on the top, righthand corner of each chronologically-numbered docket entry.

16-CV-1279 JLS (MSB)

pleading. The original Complaint filed by Plaintiff therefore remains the operative pleading.

On April 19, 2018, Defendants Soto and Wall filed a Motion to Dismiss the claim against them pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 55. Magistrate Judge Dembin issued a Report and Recommendation in which he recommended that their motion be granted and all claims against them be dismissed with prejudice. *See* ECF No. 57. The Court adopted this recommendation on October 17, 2018, and dismissed Defendants Soto and Wall from this action.

The remaining Defendants who have been served with the Plaintiff's Complaint—Defendants Barnard, Hernandez, and Ramrakha—filed an Answer to Plaintiff's sole surviving claim for excessive force in violation of the Eighth Amendment. *See* ECF No. 59. On July 26, 2019, Defendants Barnard, Hernandez, and Ramrakha filed the instant Motion for Summary Judgment. *See* ECF No. 73. The Court issued the required notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1998). *See* ECF No. 74. Plaintiff was informed that he had until September 9, 2019, to file an Opposition, *id.*; however, Plaintiff later filed a request seeking an extension, *see* ECF No. 82, which the Court granted. *See* ECF No. 86.

## II. Plaintiff's Allegations[3]

Plaintiff alleges that, on November 1, 2014, he was "brutally and viciously attacked by R.J. Donovan Correctional Facility ("RJD") staff." ECF No. 1-2 at 9. On this date, Plaintiff was "ordered to get into [his] blues (Class A clothing) and report to the building 10 office" of Ramrakha. *Id.* at 10. When Plaintiff came to Ramrakha's office, he claims Ramrakha "irrationally asked [him] about the behavior of another inmate" who was formally Plaintiff's cellmate. *Id.* Plaintiff indicated to Ramrakha that he "could not answer / / /

---

[3] The Court refers only to the factual allegations pertaining to the remaining claims in this action.

16-CV-1279 JLS (MSB)

why another inmate would behave in a certain manner." *Id.* Plaintiff alleges Ramrakha "escalated the situation and went ahead with his plans that began this ordeal." *Id.*

Plaintiff alleges that Ramrakha wrote an "untruthful" report, in which he claimed that Plaintiff "had previously refused three cellies" and was "having trouble with a fourth cellie currently assigned" to Plaintiff's cell. *Id.* Plaintiff claims he "never refused a cellie." *Id.* In addition, Ramrakha claimed in the report that, due to Plaintiff's "aggressive nature and because [Plaintiff] told [Ramrakha] to lock [him] up," Ramrakha had Plaintiff "placed in handcuffs." *Id.* The handcuffs were "placed behind" Plaintiff's back and he was "escorted to the program office." *Id.*

While Plaintiff was being escorted, Hernandez reported that Plaintiff stated, "[expletive] you Sarge, I want you guys to assault me so I can sue you [expletive], I am a hell of a writer" and he purportedly "kept shouting obscenities." *Id.* at 11. Hernandez reported that Plaintiff "lunged in handcuffs at the Sgt. who allegedly was walking 5 feet in front of [Plaintiff] and that Hernandez felt concern for the safety of his superior." *Id.* Hernandez claimed he "tried to pull [Plaintiff] back" but Plaintiff "exerted an aggressive forward momentum." *Id.* A "beating ensued" and Plaintiff was "violently shoved into a stand up 3' x 3' x 8' holding cage in handcuffs." *Id.* at 12. Plaintiff alleges that the "shove was so hard [his] blood sprayed against the adjacent wall." *Id.* Plaintiff claims that a "video will show" that he had a "bleeding wound on the left side of [his] head area above the temple," a "bleeding scraped area" on his "left forehead area above the left eyebrow, a "bone chip" on his chin, and "two burn like marks" on his left leg. *Id.* at 13.

## III. Defendants' Claims

### A. *Defendant Ramrakha*

On November 1, 2014, Ramrakha, formerly a Sergeant at RJD, was "informed that inmate Farr, CDCR no. T51954 was having a problem with his cellmate." ECF No. 73-4 ("Ramrakha Decl.") ¶ 2. When Ramrakha "arrived in housing unit 10," he was informed by "floor staff" that Plaintiff had "refused cellmates in the past and was having problems with the current inmate in his cell." *Id.* Ramrakha interviewed Plaintiff who told him that

he "did not want anyone in his cell due to his aggressive personality and was not accepting a cellmate." *Id.* Ramrakha claims Plaintiff "became more aggressive by talking louder and assuming an aggressive stance." *Id.* He further claims that Plaintiff told him he would not accept a cellmate and that Ramrakha should "just take him to the 'hole' (Administrative Segregation)." *Id.*

Ramrakha instructed Hernandez to "handcuff Farr, conduct a clothed body search and escort him to the B Program Office." *Id.* ¶ 3. While Plaintiff was being escorted, Ramrakha "walked in front of Farr and Officer Hernandez." *Id.* Ramrakha claims Plaintiff "was belligerent and shouted obscenities during the escort." *Id.* Ramrakha "heard Officer Hernandez tell Farr to get down" and, when he turned around, he saw "Farr and Officer Hernandez falling to the ground together." *Id.* He claims he "did not see what caused this to happen." *Id.* Hernandez then "used his body weight and strength to hold [Plaintiff] down." *Id.* Ramrakha told Plaintiff to "calm down and placed [his] right hand on [Plaintiff's] left shoulder to prevent him from getting up." *Id.*

Ramrakha attests that is the only force he used on Plaintiff and it was "force necessary to maintain control over [Plaintiff] to prevent him from injuring Officer Hernandez or himself." *Id.* ¶ 4. He further attests that he "did not see anyone else use unnecessary force" on Plaintiff, nor did he see Hernandez "try to kick" Plaintiff's legs. *Id.* "After responding staff arrived," Plaintiff was "helped" to his feet and "escorted" to a "holding cell in the gym without further incident." *Id.*

### B. *Defendant Hernandez*

Hernandez, formerly a correctional officer at RJD, attests that he did place Plaintiff in handcuffs and "began escorting him from housing unit 10 to the program office" at the direction of Ramrakha. ECF No. 73-5 ("Hernandez Decl.") ¶¶ 1, 2. During the escort, Hernandez was "holding [Plaintiff's] forearm." *Id.* ¶ 2. While they were walking, Hernandez claims Ramrakha was "walking a few feet" in front of Hernandez and Plaintiff. *Id.* "During the escort, [Plaintiff] appeared very agitated" and was "continually shout[ing] obscenities" at Hernandez and Ramrakha. *Id.*

5

Hernandez claims Plaintiff "appeared to lunge" at Ramrakha and, "fearing for Sergeant Ramrakha's safety," Hernandez "pulled [Plaintiff] backwards toward" him. *Id.* Plaintiff, however, "continued to pull forward despite [Hernandez's] efforts to pull him back." *Id.* Hernandez claims that he "allowed the forward momentum to pull us both to the ground, where [Hernandez] landed on [Plaintiff]." *Id.* Hernandez ordered Plaintiff to "stop resisting and lay down." *Id.* Plaintiff "continued to struggle on the ground," which caused Hernandez to use his "body weight and strength to hold [Plaintiff] to the ground" while he waited for "responding staff to arrive." *Id.* Hernandez attests Ramrakha "assisted in subduing [Plaintiff] by holding down his left shoulder." *Id.* Barnard "arrived, and we helped [Plaintiff] to his feet and escorted him to a holding cell." *Id.* Hernandez claims that "ended" his "involvement in the incident." *Id.*

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

As the moving parties, Defendants "initially bear[] the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). While Plaintiff bears the burden of proof at trial, Defendants "need only prove that there is an absence of evidence to support [Plaintiff's] case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

If Defendants meet their initial responsibility, the burden then shifts to Plaintiff to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. In attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the allegations or denials of his pleadings but is instead required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, to support his contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. "A [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

Plaintiff must also demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of his suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for him. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

Finally, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). If, however, Plaintiff "fails to properly support an assertion of fact or fails to properly address [Defendants'] assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Further, the Court cannot permit Plaintiff, as the opposing party, to rest solely on conclusory allegations of fact or law. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Indeed, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'"

16-CV-1279 JLS (MSB)

*Anderson*, 477 U.S. at 249–50 (1986); *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.") (alteration in original) (quoting *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081 (9th Cir. 1996)); *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006).

## ANALYSIS

Defendants seek summary judgment as to Plaintiff's Eighth Amendment excessive force claims on the grounds that (1) no genuine issue of material fact shows that Hernandez or Ramrakha used excessive force against him, (2) Defendants are entitled to qualified immunity, and (3) Plaintiff failed to exhaust his administrative remedies as to Barnard. *See* MSJ at 15–26.

## I. Defendants Hernandez and Ramrakha's Motion for Summary Judgment

Hernandez and Ramrakha claim that they are entitled to summary judgment of Plaintiff's Eighth Amendment excessive force claims because "the undisputed material facts show that [they] used only reasonable force" and they "are entitled to qualified immunity." MSJ at 6; *see also id.* at 16–22.

### A. *Eighth Amendment Excessive Force*

In general, an Eighth Amendment violation occurs only when an inmate is subjected to the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Jeffers v. Gomez*, 267 F.3d 895, 900 (9th Cir. 2001). With respect to Plaintiff's claims that Defendants used excessive force against him, the "core judicial inquiry" is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (extending *Whitley*'s Eighth Amendment analysis from prison riots to "whenever guards use force to keep order."); *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010). In making this determination, courts consider factors such as: (1) extent of the injury, (2) need to use the force, (3) relationship between the need and the amount of force used, (4) the
/ / /

8

threat "reasonably perceived" by the officials, and (5) "any efforts made to temper the severity" of the force. *Hudson*, 503 U.S. at 7 (citations omitted).

Ultimately, Plaintiff must show more than "merely objectively unreasonable force," *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002), to prove that Defendants acted in bad faith with the intent to harm him. *Wilkins*, 559 U.S. at 37; *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 795 (9th Cir. 2018); *Hoard v. Hartman*, 904 F.3d 780, 790 (9th Cir. 2018); *Jeffers v. Gomez*, 267 F.3d 895, 912 (9th Cir. 2001) (affirming summary judgment on behalf of correctional officers because there was an "absence of evidence showing that either officer acted purposely to injure" and the officers' actions did not suggest "malice or sadism or otherwise create an inference of impermissible motive"). The Supreme Court has made clear that the Eighth Amendment may be violated by the use of excessive force against a prison inmate "[even] when the inmate does not suffer serious injury." *Wilkins*, 559 U.S. at 34 (2010) (quoting *Hudson*, 503 U.S. at 4). While the extent of an inmate's injury is relevant to the Eighth Amendment inquiry, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 38. At the same time:

> [N]ot "every malevolent touch by a prison guard gives rise to a federal cause of action." . . . "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." . . . An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.

*Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 9); *Hudson*, 503 U.S. at 7–9; *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

### 1. Extent of Plaintiff's Injury

In his Complaint, Plaintiff alleges that he suffered from "bleeding wound on the left side of [his] head area above the temple," a "bleeding scraped area" on his "left forehead area above the left eyebrow, a "bone chip" on his chin, and "two burn like marks" on his

left leg following the incident.  Compl. at 13.  Defendants do not point to any evidence in the record to dispute Plaintiff's claims that he suffered these injuries, which are more than de minimis.

### 2. *Defendants' Need to Use Force*

Hernandez attests that the initial use of force was needed because he believed that Plaintiff "appeared to lunge towards Sergeant Ramrakha" and, consequently, Hernandez "fear[ed] for Sergeant Ramrakha's safety."  Hernandez Decl. ¶ 2.  Plaintiff disputes this, claiming he was "subdued and compliant" and walking with a "controlled escort restraining his arms with his hands twisted and thumbs pointing out behind his back."  Opp'n at 7.  Ramrakha attests that, during the escort, he "turned around and saw Farr and Officer Hernandez falling to the ground together" but he "did not see what caused this to happen."  Ramrakha Decl. at ¶ 3.  He saw Hernandez use his "body weight and strength" to hold Plaintiff down and placed his "right hand on [Plaintiff's] left shoulder to prevent him from getting up."  *Id.*

Plaintiff's own deposition testimony directly contradicts that he was "compliant" during the escort.  During his deposition, Plaintiff testified that, prior to being escorted out of the building by Hernandez, he realized he was "going to the hole" and the reality "hit" him that he would be "missing a lot."  ECF No. 73-3 Ex. A ("Pl.'s Dep.") at 16–17.  As a result, Plaintiff "let it all out verbally" because he did not care if he was "[written] up for verbal disrespect" because he was "never getting out of prison no matter how [he] behave[d]."  *Id.* at 17.  He further acknowledged that he was "cussing" out Defendants while they were escorting him, *id.* at 19, and that he was "on a tirade," saying, "[expletive] you, when you get me to the hole, I'm not going to take a celly back there either."  *Id.*  Plaintiff also testifies that he was "belligerent" and "rebellious."  *Id.*

Hernandez attests that Plaintiff "appeared very agitated and continually shouted obscenities" at him and Ramrakha.  Hernandez Decl. ¶ 2.  Ramrakha testifies that Plaintiff was "aggressive" when he initially interviewed him regarding Plaintiff's "issues he was

/ / /

10

having with his cellmate." Ramrakha Decl. ¶ 2. Ramrakha further attests that Plaintiff "was belligerent and shouted obscenities during the escort." *Id.* ¶ 3.

Further, as to Ramrakha, it is undisputed that he did not witness what precipitated the fall by Plaintiff. He attests that he did not see what happened to cause Plaintiff and Hernandez to fall to the ground. *See* Ramrakha Decl. ¶ 3. Plaintiff points to no evidence in the record that disputes this assertion. Ramrakha acknowledges that, while Plaintiff was on the ground, Ramrakha put his hand on Plaintiff's shoulder to "prevent him from getting up." *Id.*

As set forth above, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 10 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")). Here, the undisputed facts support a finding that some use of force was necessary following Plaintiff and Hernandez falling to the ground.

### 3. Relationship Between the Need and Amount of Force Used

In Plaintiff's verified Complaint, he appears to allege that he was kicked, which caused him to fall to the ground. *See* Compl. at 11. Specifically, he alleges that Defendants "physically assaulted Plaintiff in violation of his Constitutional rights under the [Eighth Amendment,] which prohibits cruel and unusual punishment[,] by slamming Plaintiff onto the pavement, a malicious and sadistic use of force meant to cause deliberate harm by kicking Plaintiff." *Id.* Plaintiff fails to attribute any specific use of force to the Defendants as individuals.

Plaintiff then contradicted these allegations, however, in his deposition. Specifically, he testified that he "knew what [Hernandez] was doing" during the escort and, "rather than allow [him]self to be faceplanted, [he] just crumpl[ed] to the ground." Pl.'s Dep. at 18. Plaintiff testified he "just let [his] legs go." *Id.* When Plaintiff fell to the ground he landed on his "left shoulder." *Id.* at 21. He does not know where Hernandez "put his hands" because he "couldn't feel it." *Id.* He knew his "head bounced," but he

could not see Hernandez. *Id.* at 21–22. These allegations are inconsistent with the facts set forth in Plaintiff's verified Complaint that he was "kicked" by the Defendants.

Plaintiff also testified that he "made no resistance" but "this guy [was] yelling, 'stop resisting, stop resisting, stop resisting.'" *Id.* at 22. The only person he could see while he was on the ground was Ramrakha. *Id.*

By Plaintiff's own admission, Plaintiff did not fall to the ground as the result of any force used by Defendants. Plaintiff also testified that, after he was on the ground, he was "shifted" for Hernandez "to get a good hold, he had to reposition himself." *Id.* at 27. As a result, Plaintiff was "turned . . . a little bit" to where he was "almost flat on [his] face." *Id.* at 27–28. At this point, he tried to "pick [his] head up" and "somebody" pushed his head down. *Id.* at 29. Plaintiff further acknowledges that he was "belligerent" and "rebellious" during the escort and purposefully caused himself to fall. *Id.* at 18–19. It is undisputed that Hernandez placed his body weight on top of Plaintiff and that Ramrakha placed his hand on Plaintiff's shoulder to prevent him from getting up, but Plaintiff acknowledged in his deposition that he could not identify any other use of force by these two Defendants.

"Force does not amount to a constitutional violation . . . if it is applied in a good faith effort to restore discipline and order and not 'maliciously and sadistically for the very purpose of causing harm.'" *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) (quoting *Whitley*, 475 U.S. at 320–21). Here, there is no evidence in the record that these Defendants used force that was malicious or sadistic for the purpose of causing harm.

### 4. *Perceived Threat*

Plaintiff's actions leading up to the use of force indicate that a reasonable inference can "be drawn as to whether the use of force could plausibly have been thought necessary." *Whitley*, 475 U.S. at 320–21. It is undisputed that Plaintiff's actions by purposefully falling to the ground started the chain of events that led of the use of force. Taking Plaintiff's factual allegations as true, the evidence in the record demonstrates that he was belligerent and caused himself to fall and that Defendants could reasonably have perceived that Plaintiff posed a threat to the "safety of inmates and prison staff." *Id.* at 320. Further, in

16-CV-1279 JLS (MSB)

"carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike." *Id.* Here, the record before the Court fails to establish a genuine disputed issue of material fact as to whether Defendants reasonably perceived a threat to their safety.

### 5. *Efforts Made to Temper Force*

Plaintiff admitted in his deposition testimony that Ramrakha had stopped another officer from using pepper spray against him. Specifically, Plaintiff testified that he "knew" Ramrakha's hand was on his shoulder and that Ramrakha had "stopped one officer from spraying" Plaintiff with pepper spray. Pl.'s Dep. at 22.

Based on the evidence in the record before it, and in light of the relevant law, the Court finds that no genuine dispute of material fact exists as to show that either Hernandez or Ramrakha used force with the malicious and sadistic intent necessary to support an Eighth Amendment violation. *Hudson*, 503 U.S. at 6. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Eighth Amendment excessive force claim.

### B. *Qualified Immunity*

Defendants Hernandez and Ramrakha also argue they are entitled to qualified immunity. *See* MSJ at 20–22. But if, when "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged [do not] show the officer's conduct violated a constitutional right," *Saucier v. Katz*, 533 U.S. 194, 201 (2001), "the question of immunity becomes moot." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 798 (9th Cir. 2014) (citing *Pearson*, 555 U.S. at 236); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012) ("If [the court] answer[s] the first of the two inquiries in the negative, then the officer's conduct was constitutional, and there can be no violation of § 1983. The officer has no need for immunity; he is innocent of the alleged infractions."). Because the Court finds no genuine dispute as to any Eighth Amendment violation by these Defendants, it need not further decide whether they are also entitled to qualified immunity. *See Greisen*

*v. Hanken*, 925 F.3d 1097, 1108 (9th Cir. 2019) ("In resolving whether a government official is entitled to qualified immunity, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and, if so, whether the right at issue was clearly established at the time of defendant's alleged misconduct.") (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)) (internal quotation marks omitted); *Saucier*, 533 U.S. at 201.

## II. Defendant Barnard's Motion for Summary Judgment

Barnard seeks summary judgment on grounds that Plaintiff failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a) before filing suit. *See* MSJ at 22–26.

### A. Legal Standard

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. ___, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA[.]" *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Therefore, regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as that process remains available to him. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and

the prisoner need not further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1862; *see also Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable.").

Grievance procedures are available if they are "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738); *see also Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) ("To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'") (quoting *Albino*, 747 F.3d at 1171).

In *Ross*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 136 S. Ct. at 1859. These circumstances arise when: (1) the "administrative procedure . . . operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60 (citations omitted).

Because the failure to exhaust is an affirmative defense, the defendants bear the burden of raising it and proving its absence. *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1169 (noting that defendants must "present probative evidence—in the words of *Jones*, to 'plead and prove'–that the prisoner has failed to exhaust available administrative remedies under § 1997e(a)"). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the plaintiff's failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed

evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. *Id.*

When defendants seek summary judgment based on the plaintiff's failure to exhaust specifically, they must first prove that there was an available administrative remedy and that the plaintiff did not exhaust that available remedy. *Williams*, 775 F.3d at 1191 (internal quotation marks omitted) (citing *Albino*, 747 F.3d at 1172). If they do, the burden of production then shifts to the plaintiff "to show that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191; *see also Ross*, 136 S. Ct. at 1858–60; *McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015) (citing "circumstances where the intervening actions or conduct by prison officials [may] render the inmate grievance procedure unavailable"). Only "[i]f the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, [is] a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166.

### B. CDCR's Exhaustion Requirements

A California prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that [he] can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." 15 C.C.R. § 3084.1(a). Since January 28, 2011, and during the times alleged in Plaintiff's Complaint, Title 15 of the California Code of Regulations requires three formal levels of appeal review. Consequently, to properly exhaust, a California prisoner must, within thirty calendar days of the decision or action being appealed, or "upon first having knowledge of the action or decision being appealed," 15 C.C.R. § 3084.8(b), "use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested." 15 C.C.R. § 3084.2(a). The CDCR Form 602 "shall be submitted to the appeals coordinator at the institution." 15 C.C.R. §§ 3084.2(c), 3084.7(a).

If the first level CDCR Form 602 appeal is "denied or not otherwise resolved to the appellant's satisfaction at the first level," 15 C.C.R. § 3084.7(b), the prisoner must "within

30 calendar days . . . upon receiving [the] unsatisfactory departmental response," 15 C.C.R. § 3084.8(b)(3), seek a second level of administrative review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent." 15 C.C.R. §§ 3084.7(b), (d)(2).

"The third level is for review of appeals not resolved at the second level." 15 C.C.R. § 3084.7(c). "The third level review constitutes the decision of the Secretary of the CDCR on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies," 15 C.C.R. § 3084.7(d)(3), "unless otherwise stated." 15 C.C.R. § 3084.1(b); *see also* CDCR Operations Manual § 541100.13 ("Because the appeal process provides for a systematic review of inmate and parolee grievances and is intended to afford a remedy at each level of review, administrative remedies shall not be considered exhausted until each required level of review has been completed.").

### C. Analysis

Plaintiff claims that, on November 2, 2014, Barnard "physically assaulted" Plaintiff, along with the other Defendants, in violation of his Eighth Amendment rights to be "free from cruel and unusual punishment." Compl. at 14. Barnard argues that Plaintiff failed to identify him by name in any of the administrative grievances he had filed arising from the allegations in the Complaint. *See* MSJ at 24.

In support of his position, Barnard proffers the sworn declarations of E. Frijas, Appeals Coordinator at RJD, and T. Ramos, the Chief of the Office of Appeals. *See* ECF Nos. 73-6 ("Frijas Decl."), 73-7 ("Ramos Decl.").

Frijas attests that the "California Attorney General's Office requested that the [RJD] Inmates Appeals Office search its records and files" to determine whether Plaintiff had "filed any inmate appeals concerning his allegation that Officers Hernandez and Barnard and Sergeant Ramrakha used excessive force against him on November 1, 2014." Frijas Decl. ¶ 6. Frijas maintains that a search found "one inmate appeal wherein the issue appealed concerned Farr's complaint of excessive force on November 1, 2014." *Id.*

Attached to Frijas' declaration is a CDCR 602 Inmate/Parolee Appeal form, authored by Plaintiff, dated November 13, 2014, and given log number RJD-14-4086. Frijas Decl. Ex. 1 at 9. In this grievance, Plaintiff describes the events that are the subject of the allegations contained in his Complaint. Specifically in this grievance, Plaintiff alleged "unnecessary and excessive force and cover-up," identifying Hernandez and Ramrakha as the perpetrators of the alleged assault. *Id.* Plaintiff also referred to Lieutenant Savala and indicated that Savala had "the videotape showing [Plaintiff's] injuries." *Id.* No other correctional officer was named in this grievance.

Ramos declares that he was asked to search in RJD's "system files" by the "Office of the Attorney General" for any "third-level inmate appeals" submitted by Plaintiff "concerning an allegation that Officers Hernandez and Barnard and Sergeant Ramrakha used excessive force against him on November 1, 2014." Ramos Decl. ¶ 6. Ramos attests that, on "August 7, 2015, this office received appeal log no. RJD-14-04086" from Plaintiff "naming Officer Hernandez and Sgt. Ramrakha as involved in the alleged use of excessive force." *Id.* ¶ 6a. He further declares that the appeal "also mentions Lieutenant Savala as having videotaped" Plaintiff following the alleged excessive force incident. *Id.*

Plaintiff initially argues that "Defendants have mounted another meager affirmative defense, pointing to Plaintiff's exhaustion without first considering the insurmountable obstacles and unnecessary hurdles presented by Defendants." Opp'n at 2. Plaintiff further maintains that it is his "understanding of the level of exhaustion is that he need not specifically name those who appeal in the official reports generated by the incident in question and Plaintiff did name Barnard in his complaint." *Id.*

As noted above, "the [D]efendant[s]' burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. The burden then shifts to Plaintiff "who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191; *Albino*, 747 F.3d at 1172; *Jones*, 549 U.S. at 218. He may do so by "showing the local

remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Albino*, 747 F.3d at 1172; *see also Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008) (noting potential "unavailability" of administrative remedies if officials "obstruct[ed] [the prisoner's] attempt to exhaust," or "prevented [him] from exhausting because procedures for processing grievances weren't followed"); *Nunez*, 591 F.3d at 1224 (finding prisoner's lack of exhaustion "excused" where record showed he "took reasonable and appropriate steps to exhaust . . . [but] was precluded from exhausting, not through his own fault but by the Warden's mistake"). "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross,* 136 S. Ct. at 1858; *Andres v. Marshall*, 854 F.3d 1103, 1104 (9th Cir. 2017) (per curiam).

Here, Plaintiff appears to argue that the administrative remedies were "unavailable." *See* Opp'n at 2. He provides no specific factual allegation, however, as to how the Defendants purportedly created "insurmountable obstacles and unnecessary hurdles." *Id.* Futher, he does not explain why he was able to write a grievance specifically naming the other Defendants and setting forth the factual allegations that gave rise to his Complaint but was prevented from naming Barnard.

As stated above, the PLRA requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." *Woodford*, 548 U.S. at 91. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Defendant argues that Plaintiff is "required to name all officers against whom he is appealing." MSJ at 24 (citing 15 C.C.R. § 3084.2(a)(3)). Specifically, section 3084.2(a)(3) provides that "[t]he inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal." *Id.*

/ / /

Here, Plaintiff clearly did not identify Barnard in the grievance that he filed regarding the November 1, 2014 incident. His claims that he faced "insurmountable obstacles and unnecessary hurdles presented by Defendants" but fails to point to any evidence in the record to support this claim. Further, Plaintiff fails to provide any specific factual allegations to support these conclusory allegations. The Court therefore finds that Plaintiff failed properly to exhaust his administrative remedies as to Barnard prior to filing this action. *See Ngo,* 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the court of its proceedings."). Accordingly, the Court **GRANTS** Barnard's Motion for Summary Judgment for failure to exhaust administrative remedies.

## ORDER TO SHOW CAUSE

A review of the Clerk's docket indicates that Defendant Stout has not been served in this action. *See* ECF Nos. 19, 48; *see also Walker v. Sumner*, 14 F.3d 1415, 1421–22 (9th Cir. 1994) (where a pro se plaintiff fails to provide the Marshal with sufficient information to effect service, the court's sua sponte dismissal of those unserved defendants is appropriate under Fed.R.Civ.P. 4(m)). According to the summons returned to the Court on February 1, 2018, it appears that the USMS attempted to serve Stout at his residence but that he no longer resided at the address. *See* ECF No. 48. In the year and a half since the summons was returned unexecuted, Plaintiff has not sought an extension of time properly to serve Stout.

Accordingly, this Court **ORDERS** Plaintiff to show cause no later than <u>thirty (30) days</u> after this Order is electronically docketed why the claims against Defendant Stout should not be dismissed for want of prosecution pursuant to Federal Rule of Civil Procedure 4(m). If Plaintiff wishes to proceed with his claims against Defendant Stout, he **SHALL FILE** proof of proper service within <u>thirty (30) days</u> after this Order is electronically docketed; otherwise, Defendant Stout **SHALL BE DISMISSED WITHOUT PREJUDICE** from this action.

**CONCLUSION**

In light of the above, the Court **GRANTS** Defendants Motion for Summary Judgment (ECF No. 73). The Clerk of Court **SHALL ENTER** judgment for Defendants Hernandez, Ramrakha, and Barnard pursuant to Federal Rule of Civil Procedure 54(b).

Further, Plaintiff is **ORDERED TO SHOW CAUSE** within <u>thirty (30) days</u> of the date this Order is electronically docketed why the claims against Defendant Stout should not be dismissed for want of prosecution pursuant to Federal Rule of Civil Procedure 4(m). Should Plaintiff fail to provide the Court with proof of service on Defendant Stout within <u>thirty (30) days</u> of the date this Order is electronically docketed, Plaintiff's claims against Defendant Stout **SHALL BE DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

Dated: December 9, 2019

Hon. Janis L. Sammartino
United States District Judge

16-CV-1279 JLS (MSB)